# SECOND DISTRICT, 1895.

### H. A. HALBERT ET UX. v. SARAH B. BROWN ET AL.

#### No. 1615.

1. **Wife's Power of Attorney to Husband.**—A power of attorney from the wife to her husband authorizing him to convey her separate real estate is void, and a deed by him thereunder does not divest her title to the property, and will not estop her from afterwards claiming it.

2. **Same—Five Years' Limitations—Deed.**—A deed conveying separate property of the wife, executed by the husband under a power of attorney from her, duly recorded and accepted by the grantees in the belief that it conveys a perfect title, and

under which they have had five years' possession after the wife's discoverture, is sufficient to support the five years' statute of limitations against her.

3. Limitations—Payment of Taxes.—Limitations began to run in favor of defendants January 23, 1883, the five years' next thereafter expiring January 23, 1888. They paid the taxes for 1883, 1884, 1885, 1886, and 1887, but did not pay them for 1888. *Held*, that as the taxes for 1888 were not due and payable until after the bar of the statute was complete, the title of defendants under the five years' statute was perfect without their payment.

APPEAL from Tarrant. Tried below before Hon. S. P. GREENE.

The trial court's conclusions of fact and law, adopted by the opinion in this case, are as follows:

"1. The land in controversy is a part of a tract of 160 acres granted by the State of Texas to Archibald Robinson by letters patent, number 43, volume 15, dated August 19, 1856. Said Archibald Robinson and Nancy Robinson, his wife, by their deed with full covenants of general warranty, dated April 1, 1887, duly acknowledged April 11, 1887, and recorded, conveyed said 160 acres of land to Julian Field. It is stated in this deed that the grantors therein had before that time executed, acknowledged, and delivered to the grantee a warranty deed, conveying the same land, and that the former deed had been duly recorded in Tarrant County, and had afterwards been lost or destroyed; and further, that the records of Tarrant County having been destroyed by fire after the record of said deed, the new deed was executed, acknowledged, and delivered as a substitute for the deed that had been lost. Said Julian Field, by his deed containing full covenants of warranty of title, bearing date October 13, 1869, duly acknowledged, and on April 11, 1881, recorded in Tarrant County, conveyed a part of said Archibald Robinson 160 acres tract, including in the lands conveyed the lot in controversy in this suit, to George F. Alford, as administrator of the estate of John E. Cravens, deceased.

"2. John E. Cravens died in the year 1860, and left surviving him his wife, Mary B. Cravens, and two daughters, named Mollie P. or Mary P. Cravens and Earle E. Cravens, and no other children. Mary B. Cravens died in the year 1861, leaving surviving her no husband and no children, except said two daughters, Mollie P. Cravens and Earle E. Cravens. Said Earle E. Cravens died in April, 1879. She had never been married, and left no children. Her next of kin and sole surviving heir was her sister, Mollie P. Cravens.

"3. Mollie P. Cravens married Benjamin F. Fortson, in Navarro County, Texas, July 1, 1873. Benjamin F. Fortson died in Corsicana, Texas, on January 22, 1883. His wife, Mollie P., survived him, and remained a widow until December 14, 1884, on which day she married H. A. Halbert, whose wife she now is. H. A. Halbert is one of the plaintiffs in this suit, and his wife Mollie P. is the other plaintiff.

"4. During the existence of the marital relation between Benjamin F. and Mollie P. Fortson they executed a power of attorney by which Mrs. Fortson appointed her husband, Benjamin F. Fortson, her attor-

ney in fact, with full power to sell and convey the lands or any part thereof which she had inherited from her father, John E. Cravens. This instrument was signed and acknowledged by both husband and wife, and was duly recorded in Tarrant County, November 3, 1879.

"5. In November, 1879, and during the existence of the marital relation between Benjamin F. Fortson and his wife, Mollie P., said Benjamin F. Fortson executed and delivered a deed with full covenants of warranty, conveying the lot in controversy to M. G. Ellis and W. A. Huffman for $75 cash, which deed was duly acknowledged November 3, 1879, and duly recorded in Tarrant County, November 6, 1879. Upon the trial of this cause this deed was proved as at common law. M. G. Ellis and W. A. Huffman paid to Benjamin F. Fortson the $75 for the lot, and received the deed of Fortson, as attorney in fact for his wife, believing the same to be a valid and binding conveyance in fee simple, and relying upon the power of attorney as authorizing him to sell the lot and to bind his wife by his conveyance of the same.

"6. M. G. Ellis and W. A. Huffman were each to have an undivided half-interest in the lot, and afterwards, on June 4, 1880, M. G. Ellis, by his deed of that date, with full covenants of warranty, duly acknowledged and recorded June 4, 1880, in Tarrant County, conveyed his half-interest to Huffman, who paid a valuable consideration for this conveyance, believing the same would vest in him the title in fee simple to the interest thereby conveyed.

"7. W. A. Huffman, by his deed of date of November 4, 1881, with full covenants of warranty, duly acknowledged, and recorded in Tarrant County, November 4, 1881, conveyed the lot in controversy to defendant Sarah B. Brown, who paid W. A. Huffman $600 for the lot, and received the deed executed to her by Huffman therefor, believing it did and would vest in her the title in fee simple to said lot, and having no actual knowledge of any imperfection in her title.

"8. Neither M. G. Ellis, nor W. A. Huffman, nor defendant Sarah B. Brown, nor any other defendant in this suit, knew before it was filed that the plaintiff, Mollie P. Halbert, intended to dispute the validity of the power of attorney to her then husband, Benjamin F. Fortson, or the deed of conveyance which Benjamin F. Fortson executed under said power, or that plaintiffs, or either of them, intended for any reason to claim said lot.

"9. Up to the time of the execution of the deed by W. A. Huffman to the defendant Sarah B. Brown, the lot in controversy had never been occupied, and was uninclosed, and had no improvements upon it. Said deed was executed on the day of its date, November 4, 1881. Immediately thereafter, and during the year 1881, defendant Sarah B. Brown began to improve said lot. She inclosed it and built a house and made other improvements thereon, and as soon as the house was completed, she moved into it and took actual, open, and adverse possession of the lot, to wit, on the last day of December, 1881; she has ever since that time had actual and adverse possession thereof, and has

been using and enjoying it, and has constantly claimed to own it under the deed of W. A. Huffman. Her possession was continuous, and was not interrupted by any adverse suit to recover said lot until the filing of this suit, on September 10, 1890. She has paid all State and county taxes levied on the lot for the years 1882, 1883, 1884, 1885, 1886, and 1887; she has also paid the city taxes thereon for the years from 1881 to 1888, both inclusive, but she did not pay the county or State taxes for 1881 or 1888, but W. A. Huffman, her vendor, paid said taxes for 1881. County and State taxes were levied upon the lot for the years 1888 and 1889, but neither Sarah B. Brown nor any other defendant, nor any person through whom any one or more of the defendants claim titles to said lot, paid any part of the said taxes for 1888 or 1889. Neither the county nor State taxes for 1888 and 1889 have ever been paid. The State and county taxes paid by Sarah B. Brown for the years 1882, 1883, 1884, 1885, 1886, and 1887, and the city taxes for the years 1881 to 1888, inclusive, paid by her, amount in the aggregate to the sum of $223.50. After the filing of this suit, Sarah B. Brown paid the taxes levied on the lot for the year 1890, amounting to the sum of $40.

"10. Defendant Sarah B. Brown had adverse possession in good faith of the lot in controversy for more than one year next before the commencement of this suit, and made permanent and valuable improvements thereon during the time she had possession, of the aggregate value of $1500. The value of such improvements at the time of the trial of this cause and the amount to which the value of the lot is actually increased thereby is $1500. The value of the lot without the improvements so made is $2000, and the value of the lot and the improvements is $3500."

The conclusions of law are as follows:

"1. The plaintiff Mollie P. Halbert, being the only surviving heir at law of John E. Cravens, deceased, is entitled to his estate, and to the lot in controversy, which was part of such estate, and became the separate property of said plaintiff.

"2. Plaintiff Mollie P. Halbert is the common source of title of plaintiffs and defendants to said land.

"3. That the power of attorney from plaintiff, then Mollie P. Fortson, and her husband Benjamin F. Fortson, to said Benjamin F. Fortson, was and is void, and not binding upon plaintiff, and the deed executed under said power of attorney by Benjamin F. Fortson, conveying the lot in controversy, was and is without authority, and does not divest said plaintiff of the title to said lot.

"4. Said power of attorney and deed do not constitute a contract for the conveyance of the lot, and the circumstances shown do not estop the plaintiff, Mollie P. Halbert, from claiming the lot.

"5. The defendants are not entitled to the benefits of either the three or the ten years' statute of limitation.

"6. From the 1st day of July, 1873, to the 22nd day of January, 1883, the plaintiff Mollie P. Halbert was under the disability of coverture, and until the removal of that disability, on January 22, 1883, the possession of the defendant Sarah B. Brown, which was begun during the period of coverture, could not set in motion the statute of limitation of five years.

"7. After the removal of said disability, the adverse possession of the defendant Sarah B. Brown, who claimed under a duly registered deed conveying to her the land in controversy, and who paid all the taxes upon the land in controversy for each of the years 1883, 1884, 1885, 1886, and 1887, set in motion against the plaintiff, Mollie P. Halbert, the statute of limitation of five years; and although said period of five years did not expire until January 22, 1888, and said defendant did not pay any of the taxes levied upon the lot for the year 1888, inasmuch as said taxes were not due or payable on January 23, 1888, and the levy thereof by law not being required to be made until later, when the five years' period expired, said defendant's limitation title accrued then without the payment of the taxes for the year 1888, and became and is complete, and the defendant Sarah B. Brown is entitled to judgment under her plea of limitation of five years, and by virtue of the five years' statute of limitation, title to said lot vested in defendant Sarah B. Brown on January 23, 1888."

*Williams & Butts*, for appellants.—The court erred in holding that the plea of five years' statute of limitation can be maintained and its sufficiency supported by the evidence of proof of payment of taxes for less than five years; whereas the law is, that the possession and payment of taxes necessary to support such plea must be for the same period of time, and that this period can not be less than five years. Rev. Stats., art. 3193; Kelly v. Medlin, 26 Texas, 56; Murphy v. Welder, 58 Texas, 240; Sorley v. Matlock, 79 Texas, 307.

*Hunter & Stewart*, for appellees.—It is the adverse possession for five years, open and notorious, with the deed on record duly registered, and during that time paying taxes, all that became due on the land, that puts the true owner on notice of the occupant's intention to hold against the world under the statute of limitation, that forms the material matter for consideration under this five years' statute of limitation.

STEPHENS, ASSOCIATE JUSTICE.—The conclusions of law and fact upon which the judgment appealed from was rendered we approve, and hence affirm the judgment.

*Affirmed.*

Delivered January 2, 1895.

Writ of error refused.